in her official capacity as Secretary of the United States Department of Health and Human Services. Mr. Goyal for the appellants, Ms. Wright for the appellate.   Thank you, Mr. Chairman. Good morning, Your Honors. Good morning. May it please the Court, my name is Ankur Goyal. I'm representing the Seoul Community Hospitals and the Medicare-dependent hospitals in this case. I'd like to reserve five minutes for rebuttal. I have two key points, I think. First, in this case, the Secretary has not paid the target amount defined by statute. The target amount means the hospital's own actual operating costs and a specified base cost reporting period. I think it's undisputed that the rate she paid is not the hospital's cost in the base period. The second point is that these pre-base year reductions are framed as budget neutrality adjustments, but the budget neutrality statute neither requires nor authorizes the failure to pay using the target amount. I'd like to turn first to talk about the budget neutrality statute and elaborate on that. The budget neutrality statute calls for adjusting weighting factors, the DRG weights in the vernacular of the Medicare program, the weighting factors, not the payment rates. And the Secretary concedes she did not adjust the weighting factors in order to be budget neutral. If the Secretary had simply done so, there would be no issue here. The genesis of this case is that the Secretary has adjusted rates rather than weighting factors. Did this, as a result, did the Secretary fail to produce budget neutrality? Your Honor, I think the question here is not so much. But that's my question. Your Honor, I don't know the answer to that. Well, isn't that important? Because for us, the key question is whether the target amount has been paid. By operation of what the Secretary did is she took reductions to weights rather than rates, and when you start mixing different things, it's hard to know exactly where it comes out. But in aggregate, what we're really talking about here is in Cape Cod, Your Honor, the issue was by adjusting rates rather than a different component, was the error harmless? Here, the statute is very clear about adjusting weights rather than rates. Don't we have the same harmless question to ask? We do have the same harmless question to ask, Your Honor. If it accomplished budget neutrality, then doesn't Cape Cod say it's harmless? No, Your Honor, because the harm here is that the target amount has been violated. So the question is the statute says adjust the classification and weighting factors annually. That's 1395WWD4C, Romanet I, and it can be found at page 8A of the statutory appendix to our opening brief. And then 1395WWD4C, Romanet III then requires that any such adjustment under Clause Romanet I shall be made in a manner that assures budget neutrality. So such adjustment is the annual adjustment to the weighting factors that shall be made in a manner that's budget neutral. My understanding is you're claiming that you come out with less as a consequence of the formula there. That's right, Your Honor. And on the question of harmless, what we're saying is that adjustments that are pre-base year, so we have the base year of 2006 for the Seoul Community Hospitals, when you adjust the rates down below the hospital's cost that it actually incurred in 2006, that those are not harmless. Adjustments that are after the base year may be harmless. So the Cape Cod question that Judge Taylor, that you asked, it's harmless if it's after the base year because those are things that the hospitals are subject to, the adjustments that occur, for example, from 2009 to 2010 to the weights. If the Secretary instead adjusts the rates, the hospitals would still be subject to those. It's the pre-base year adjustments that the Secretary introduced to the target amount. Those are the ones that take the hospital's payments below the cost in the base year, and that's the reason why the Cape Cod issue, the harmless error, doesn't apply. You're saying the budget neutral adjustment has not been applied to the group weight? The Secretary concedes that she has not adjusted the weights to be budget neutral. That's correct, Your Honor. What she has done is instead apply adjustments to the rates, and that is the source of the problem. The other thing I would say is ordinarily— The case mix is going to be lower. That's the divisor, and so if you do it the way you're talking about, you're going to get a higher payout than what they're giving you now. Well, that's right, Your Honor. The way they're doing it now reduces the cost below the cost in the base year, and I think their own example at page 28 shows that. The example is the hospital's cost per patient in the base year are $5,000, and yet the payment rate that's being provided is $4,900. So just from their own example, I think that fact is clear. But isn't that a result of the statutory requirement that applies to your clients as well as to all the other hospitals, that there be budget neutrality with reference to, what is it, 1981? And everybody's belt is tightened under that, and that's what the statutory provision you point to requires is the budget neutrality. No, Your Honor, that's not what the statutory provision provides for. What the statutory provision provides for has nothing to do with 1981 or the rates. It says a separate component of the payment is the weights, and the weights each year that they're adjusted should be adjusted to be budget neutral. For the whole statute, though, not just for your clients, but for every hospital under the statute. Yes, for every hospital. We are absolutely the sole community hospitals and Medicare-dependent hospitals are affected by the DRG weights as well. If the secretary had simply adjusted the DRG weights in 2009, she adjusted the DRG weights. If those had been made budget neutral, as the statute calls for, the sole community hospitals, Medicare-independent hospitals, their rates are going to be applied to those weights. It would apply to all of them. Let me ask you the question this way. Is there any evidence that Congress cared about the DRG weights specifically? Didn't it care about budget neutrality? It didn't think there was something wrong with the DRG weights, did it? It wasn't setting out to build budget neutrality into them. It was setting out to build budget neutrality into the whole program, wasn't it? No, I disagree, Your Honor. The specific budget neutrality provision is contained. I know that's what it says, but wasn't Congress' concern about budget neutrality of the Medicare Act? Well, no, because where it's contained is highly relevant to what the purpose is. There are a variety of budget neutrality provisions for different aspects of the Medicare program. Congress said, create DRG weights. This is the structure of the program. You're going to have DRG weights and payments being made based on those. Adjust those annually, and when you make that adjustment annually, that adjustment shall be made in a manner that's budget neutral. I guess the other thing I would say, Your Honor, is even if there is discretion to adjust rates rather than weights, adjusting the rates in a manner that violates the target amount would not be permissible. But you're assuming that the target amount is statutorily required to be calculated with the DRG in the denominator to the way the Secretary has historically been doing, but that's not statutorily required, is it? I mean, they could use a different weight there, a non-budget neutralized DRG for that purpose because that's something the statute doesn't restrict. Your Honor, the statute doesn't talk about DRG weights in the denominator, but that's not our point. The point is that the costs that the hospital incurred in that base year are not being paid. That's the target amount. And the Secretary doesn't claim to be paying the costs that the hospital incurred in the base year, and that's the critical issue. What in the statute requires that the hospital be paid the costs that are actually incurred in the base year as distinct from some adjusted cost? It's in the definition, Your Honor, of the target amount, and the target amount is specifically defined. We have this at page 4 of our reply brief. It's excerpted there. The target amount means, it uses that word specifically, it means the allowable operating costs of inpatient hospital services for the hospital, and then skipping a few words, for the base cost reporting period. That's the key language, and that is precisely what the statute defines. It is the central protection. The whole point of the Seoul Community Hospital Program is this is the protection that they are provided to insulate themselves against financial pressures that otherwise would eliminate the viability of a lot of these hospitals in the communities in which they operate. The same thing for the Medicare-dependent hospitals. And I see that I'm into my rebuttal time, so if there are no further questions at this time, I'd like to reserve the balance of my time. It's okay. Good morning. Abby Wright on behalf of the Secretary. I'd like to begin just to answer your question, Judge Tatel, about whether we have achieved budget neutrality. The answer is that we have achieved budget neutrality through the Secretary's two-step process, which is to first take the DRG weighting factors as they change from year to year and normalize those. And then second – But you don't apply budget neutrality, which the statute says you're supposed to. And it has an effect on how much they're paid. Well, I have a couple of responses to that. I mean, the first – Right. You're not applying budget neutrality to the group – That's correct. The normalization does not – And the statute requires it. We disagree with that point, Your Honor. The district court held that we had discretion under the statute. Well, I don't care what the district court held. That's not what's at issue here. The district court has no discretion to decide whatever it wants about what the statute means. I thought you were conceding – Let me make sure I'm understanding. It's a crazy case. Okay. Yes, Your Honor. My understanding is under that three-I section, you're acknowledging that you didn't do what the statute appears to suggest, which is to put budget neutrality into the group weight first. Because if we're working with this forever, it does affect the payout for them. And I think you're conceding that. But you're saying it says shall be in a manner, and you're saying under that provision means we can do it or not as we see fit. Well, I don't know where to start, Your Honor. Well, start by telling me – Yeah, I'll start with the statute, Your Honor, since that's what you said. Okay. So I think for me it's helpful to understand sort of an example from real life, which would be imagine that – this is real life, sorry – the statute said, you know, paint your house every five years. Wait, can you just answer one question for me first to make sure we're starting at the same place? You were not applying the budget neutrality adjustment to the group weight, right? When we normalize, it achieves some budget neutrality, but not all. Oh, come on, just answer my question. It's hard enough. Yes, that's right, Your Honor. You're not. No, we are in part. You are normalizing, but you are not applying full budget neutrality adjustment. That's right. We normalized before there was even a statutory budget neutrality requirement, yes. And I'm suggesting that 3I says that you were supposed to. I disagree with that, but the point I want to get to quickly, Your Honor, is that it doesn't matter for the way they're paid, because what matters in this case is that we apply a cumulative budget neutrality adjustment for pre-base years, which we could do whether that's – we do it weights or we do it rates, because that's just a multiplication. We could do it in the rate portion. We could do it in the weight portion. Well, it's funny, I did it and I got a different payout. If I'm the hospital, I'd rather you apply the budget neutrality to the group weight, because I'm going to come out with more. No, they don't actually care how they get paid more, because when the Secretary did it differently for the Medicare-dependent rural hospitals for several years, she simply didn't apply the pre-base year budget neutrality adjustments. She didn't change the way the weights or rates were handled. So they can win without us having to do it in the weights. And I don't think they plan to actually care whether we do it in the weights or the rates, as long as they get paid more. So I think the real dispute here is between whether the Secretary is allowed to apply that cumulative budget neutrality adjustment for pre-base years. So that's what the heart of this case is about. Yeah, I know that's the other part of the case, and I thought that those were different issues and you're very strong on that, the correction the Secretary made, that's what you're talking – I think that's a different issue than the one that I'm asking you about now, and they clearly are distinguishing between applying budget neutrality to the rate as opposed to the group weight. They clearly – that was his whole argument. His argument was that for pre-base years, so what we're talking – they don't object to the year-to-year cumulative budget neutrality adjustment, because whether you're in weights or rates, they acknowledge it comes out the same. The same is true for the pre-base years as well. So we could – I can make it come out my way with weights. I can make it come out their way with rates. And, in fact, when the Secretary did it the other way for several years, it was just because fiscal intermediaries didn't take off that pre-base year cumulative budget neutrality adjustment. So there really, I think, is only one issue here, and that's whether the statute permits the Secretary to equalize. Avoid using the budget neutrality adjustment for the group weight. No, Your Honor, I really – I want to be strongly clear here, which is that the Secretary for 25 years has been doing budget neutrality adjustments the way she does here, and she does it in other parts of the Medicare statute too. So if we start messing around with the weights, there's going to be repercussions throughout the entire inpatient prospective payment system. So what I'm suggesting is that the court could look at what the Secretary did, in fact, do for the Medicare-dependent rural hospitals for several years, which was – which plaintiffs were happy with because it did what they wanted, which was just not to apply that additional, at that time, 1.74 percent reduction. Now it's 2.27 percent reduction. For prior years. For prior years, that's right. I understand that. Okay. Go ahead. I'm going to make that very clear. And then – so with respect to the application of the cumulative budget neutrality adjustment, as we explain in the example on our brief at page 28, when Congress enacts a new base year and when the Secretary implements a new base year, Congress is checking back in with rural hospitals and saying, have your costs changed? How different are you from a federal rate hospital? And the way that the Secretary determines to do that, to really compare apples to apples, is to apply the cumulative budget neutrality adjustment even for pre-base years. So as we show in our brief, and I don't think plaintiffs have refuted the facts of this, even if their costs were the same between 1996 and 2006, under their theory they get paid 2.27 percent more when Congress enacts a new base year. Under our theory, we can actually compare, have there been changes? Have there been changes between their costs to treat the average patient from 1996 to 2006 and their costs compared to federal rate hospitals? And that's because you keep the DRG unadulterated by the BAN. And that's the other point to respond to the weights versus rates. The weights, as they stand now, have meaning. They represent a ratio of how much it costs to treat this patient as compared to the average patient. If the Secretary were to be required to put that 2.27 percent into the weights and every year it would be a different number and the weights would go back and forth and we wouldn't be able to tell anything about what the weighting factors meant with respect to the ratio of treatment. What does 3 to the Y mean? You mean that 1395, WWD4, C3? Well, I think it means that you have to do it in a manner which means you can do some other things too, but at the end of the day you've got to achieve budget neutrality, which the Secretary does achieve budget neutrality. And to be clear, it's budget neutrality with respect to the weight diagnosis-related group weighting factors. So what Congress wanted to make sure didn't happen was when the Secretary changed those to reflect treatment patterns, technology, just costs of treating patients, didn't want to increase or decrease Medicare payments based on the diagnosis-related group weighting factor changes. And so the Secretary, and plaintiffs don't dispute that, I think, although they seemed equivocal this morning, but has achieved budget neutrality from year to year. So her changes to the diagnosis-related group factors plus the budget neutrality adjustments maintain budget neutrality from year to year. Happy to answer any additional questions. So you see this as a Cape Cod case, right? Is that right? I don't think we've erred in interpreting the statute, but assuming that you disagree with me on that- No, no, I don't mean-no, no, I mean in terms of achieving budget neutrality. I read Cape Cod as saying, yes, the Secretary did it differently than the statute expressly required, right? Yes, I guess I was disagreeing in touch with whether we drink differently than- No, no, no. But yes, I agree with you, Your Honor, that what we're talking about is the discretion- And by adjusting the rates, you accomplished the budget neutrality Congress directed. That's right. Now, Congress is- And if you did the weights, you would screw up the rest of the system. Is that the point? That's exactly right, Judge Tatum. Put it in legal terms? Yeah. The only problem-I mean, the problem with the answer is that I don't want the court to not be trying to wreak havoc on your system, but you really are not answering my question under 3. And 3 refers back to C.I., which says, shall adjust the classifications and weighting factors. And by a budget neutrality-because that's what Rule 3 is about-by a budget neutrality adjustment. You're referring to the other arguments that they're raising, which I totally understand and I agree with, incorporation of the prior years. That all makes sense to me. Okay. I'm not dealing with the piece of it. The Cape Cod does not apply here because the Cape Cod found that there was no loss to the claim. I calculated this. I may be crazy. There is a loss if you don't apply the budget neutrality adjustment factor to the weighting factors as the statute requires. I think Judge Pillard actually was getting at this in plaintiff's discussion, which is that we could do it in the weighting factors and still apply a budget neutrality cumulative adjustment for pre-based years that would take their rates back down. So why it looks different from what they've done in the amicus brief is because they have not applied the pre-based year adjustment. The other thing we could do is renormalize the case mix index, which I think we might very well do because now our weights would be all, to quote Judge Shadle, screwy. That would actually make it come out the Secretary's way again. But you would have mucked up your DRGs and their utility for the kind of comparative across time and across geography that they're useful for. The DRG weighting factors are used throughout the entire inpatient prospective payment system. We don't know exactly what would happen if we had to change all the weights, but we could see there would be repercussions or other budget neutrality requirements. That's right. What's your statutory language argument, your best statutory language argument, you know, given the provision that Judge Edwards is asking about? In terms of the target amount, I think, is what you're asking. Well, in terms of the adjustment being. Oh, the C3. Yeah. So the statute says assures of the aggregate payments. And so I think Congress is looking at aggregate payments. And aggregate payments. Where are you looking now? So I'm in C3. So A17 of my brief. I'm not sure what page it is. Okay, go ahead. So Congress is concerned about that the aggregate payments don't go up or down. And that's exactly what the Secretary has done. And so I read shall be made in a manner to mean you could do it. And I was giving an example of the house painting example. So say they said you have to paint your house every five years and do so in a manner that assures that no paint chips go into the soil, for example. Plaintiff's reading would mean that the way I'm actually painting the house has to assure that no paint chips go in. I couldn't put down a tarp, for example. So the Secretary is on here. She's just put down a tarp. So we normalize. And then because Congress is concerned about aggregate payments, the Secretary comes in with a supplemental budget neutrality adjustment. And that's, as I said, something that's been done for 25 years, since the very beginning of the budget neutrality adjustment and is a way that other budget neutrality adjustments are calculated. What proportion of the hospitals are these SCHs and these hospitals? I'm not sure about percentage. I mean, there are 420 sole community hospitals, so a small percentage. In the country. I mean, it seems like it doesn't, except for them, it wouldn't make a difference whether the budget neutralization is done within the DRG or as a factor outside of the DRG. It just doesn't make a difference because there isn't this denominator where the DRG appears again. And so it seems like Congress might not be so focused on that when they were writing this provision. Does L help you out? L. The Secretary shall provide by regulation for such other exceptions and adjustments to such payment amounts as the Secretary deems appropriate? I think we could. That's not the provision that we invoked here. I know. And it would be by regulation, and we did regulation for Medicare-dependent rural hospitals, but not for sole community hospitals. So I think we could. I think the Secretary could certainly do that if this court required her to do it in a different way going forward. That was the subject of the prior Adirondack case. The way you're reading it, and, again, I understand your argument and the potential problems that might arise from what appears to be a literal reading of the statute. You seem to be saying in 3I any such adjustment under Clause 1 as if that means there may or may not be an adjustment with the budget neutrality. C-1 says the Secretary shall adjust the classifications and the weighting factors. Shall do it. Right, and we do it. We do that. No, you don't. It's the budget neutrality. Right, but C-1 is not the budget neutrality provision. You don't apply it to the weighting factors. But C-1 has been in the statute before there was any budget neutrality requirement. C-1 is just adjustment every year, which we do. Right. Right. Okay, but you're saying that C-3, right. Now, 3 adds, which adds later, that's the budget neutrality requirement, and it's referring back to the weighting factors. You're supposed to apply a budget neutrality adjustment to the weighting factors. Right, and I'm reading C-1. Now, you're reading 3, I guess, to say any such adjustment as if to say, well, you may or may not have done it to the weighting factors. You don't have to present shall be made in a manner that assures. Is that the way you're reading it? I'm reading the shall be made in a manner that assures aggregate payments to give us room to do put that tarp down in my example, so do a little cleanup. As long as it ends up budget neutral, you're saying that's it, we're not worrying about beyond that. Right. We think Congress's goal in this provision is, you know, it's clearly to maintain aggregate payments not going up or down because of those changes, and that's what the Secretary has done that year. Doesn't the way the reimbursement amounts were calculated that's expressly set out in separate provisions in the statute in 1984 and 85 also help you, given that the methodology there is Yeah, I mean, so this has been done even from the early 80s, when the first standardized rate that was divided by case mix index as well, and then there was a period where all hospitals were sort of hospital-specific payment hospitals because there was a transition period from the, you know, when the inpatient perspective system first began. So, and the treatment there was the same as well. And then the Secretary has applied the cumulative budget neutrality adjustment, made a decision in 1991 to do so to both federal rate and hospital-specific rate hospitals. So, if there are no further questions, we would ask the District Court to confirm. Thank you. I'd like to address several of the points. First, counsel said these hospitals just want to be paid more. Well, they want to be paid what they're entitled to in the protection under the statute. But beyond that, I would add three additional points. First, they're not asking to not have the budget-neutral DRG weights applied to them and bear the burden of budget neutrality. I want to be very clear about that. Budget neutrality of the DRG weights, if it was applied to the DRG weights, would properly apply to these hospitals as well. Second, the other rates, the federal rate, matters to these hospitals too. It's not that the only rate that matters to them is the hospital-specific rate or the target amount. The Medicare-independent hospitals are paid the federal rate plus 75% of the difference. So, if the federal rate is also problematic and should be higher, they would be affected by that. They're not here complaining about that because we agree that it's harmless here. So this is not an issue of just trying to take money that they're not entitled to. What we are doing here is hospitals who have an interest in both rates, even the small community hospitals, many of them are, and in fact, some of these hospitals may at some point have been paid based on the federal rate as well. They get whichever one is higher. So that's really, I think, the issue here is getting to what is the rate that Congress actually provided. The other point I wanted to, one of the other points I wanted to address was the 25 years. And I think what's clear here is the Secretary is missing the key point. What she's been doing for 25 years is apply essentially post-base year adjustments, cumulative adjustments, yes, but budget neutrality adjustments for after base years, which we concede is harmless error so that there's no problem. The federal rate was set based on costs in 1981. You apply budget neutrality adjustments after that. In fact, their base year is 1981. No problem. It's harmless error. That's why the Medicare-dependent hospitals for whom it's part of their formula is the federal rate. We're not complaining about that aspect. Similarly, all the other provisions are the budget neutrality provision came into place after some of the other base years were in effect. So the district court's opinion talks about rulemakings from 1993. Well, in 1993, the only base year that existed for the hospital specifically was 1986. Those are all post-base year adjustments. The issue at hand, the first time it's ever come up in rulemaking, was in the 2009 rulemaking for Medicare-dependent hospitals. And the Secretary continues to conflate pre-base year and post-base year. The issue here is pre-base year, not post year. The 25-year history, it's fine. Post-base year is fine. We don't have a problem with it. It's not because it's not an adjustment to the DRG rates, but in those instances, it's harmless error. The other thing I wanted to address, havoc on the system. Well, the Secretary's brief says she did it this way because she finds it easiest. And I recognize that there's complexity involved for administering this program, but easiest does not make it right, especially when it's contrary to what the statute provides. And the Secretary has never said she couldn't adjust the DRG rates in a way that is both budget neutral and doesn't produce all these other problems of normalization. That's up to them to decide how to do. I just don't understand, Mr. Gohl, why your position isn't just eaten up by the discretion that the Secretary has under 1395 WWA4 to determine a hospital's cost in a base year. I think even if you've got the relief that you sought, that the Secretary could persist in seeking budget neutrality effectively in the bottom-line way that she's been doing, given that discretion. Because that's not the discretion. That's not what the Secretary's done. The Secretary has never said that these are not the actual costs of the hospital. The cost of the hospital that's in A4, the way that is submitted on a cost report is computed as the actual. But they're determined by a formula also. They're determined by a formula that does or doesn't include the DRG in a particular way, right? Right. It's determined using the cost the hospital actually submits in its cost report annually, the discharges that are in its cost report annually, and the DRG rates. And the Secretary puts those together, and she has not claimed that this is being done because the cost to accurately reflect the hospital's costs in the base year, that these adjustments are necessary. Just conceptually, why isn't it double-counting of the budget neutrality amount to have it both in the target rate and separately in the DRG when you're doing the whole case next? Your Honor, I'm going to give you a math answer to that. The double-counting actually works in reverse, and the mechanism for this is at pages 29 to 31 of our brief. The weights are not budget neutral. The Secretary concedes they're not budget neutral. The weights themselves are not. That's right. The weights are not. They're in this calculation that you referred to. They're in the denominator of the calculation. If the weights were budget neutral, at some level, they would have to be lower. If they were lower and they're in the denominator, the rate would be higher. That's your whole case. Not lower. That's not our whole case. That's part of our case. So the double-counting is actually the reverse. The rates have already been reduced at some level because the weights were not made budget neutral. That is the mathematical operation because they are in the denominator. And now the Secretary is coming back and loading an additional reduction on top of that. So it's actually the reverse. It's already reducing their rates, and now there's another reduction that's in place. And that fits in with the reason why it is harmful to make the adjustment to pre-base here and harmless to make them post-base here. Okay. I see my time has expired. Thank you, Your Honors. All right. Thank you. Okay. Thank you both.
judges: Tatel, Pillard, Edwards